UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHOEBE B.,[1]
                                        Plaintiff                   DECISION AND ORDER

-vs-
                                                                    1:20-CV-01570 CJS

COMMISSIONER OF SOCIAL
SECURITY,
                                        Defendant.

_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the

application of Plaintiff for Supplemental Security Income ("SSI") benefits.   Now before the Court

is Plaintiff's motion (ECF No.10) for judgment on the pleadings and Defendant's cross-motion

(ECF No. 12) for the same relief.   For the reasons discussed below, Plaintiff's application is

granted, Defendant's application is denied, and this matter is remanded to the Commissioner for

further administrative proceedings.

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential

evaluation process:

A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R.
§§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant

_____

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective
immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the
United States District Court for the Western District of New York, any non-government party will be identified and
referenced solely by first name and last initial."

is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[2] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773

---

[2] RFC "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.   Briefly, this action arises from the denial of Plaintiff's third application for SSI benefits, and is her second action in federal court to challenge the denial of such application.   The first such action [3] was remanded to the Commissioner for further administrative proceedings pursuant to a stipulated Order by the Honorable Frank P. Geraci, United States District Judge, on January 8, 2019.   Following that remand, the Commissioner conducted a new administrative hearing and again denied Plaintiff's request for SSI benefits.   Plaintiff then commenced this action.

In the administrative proceedings before the Commissioner, Plaintiff claimed to have become disabled as of November 22, 2012, due to a combination of impairments including obesity, back pain, chronic obstructive pulmonary disease ("COPD"), anxiety, depression, history of lymphoma, chronic pain disorder, bilateral knee pain and hypothyroidism. (Tr. 1111).

---

[3]Case No. 1:18-CV-00145-FPG, Western District of New York.

On July 9, 2020, the most-recent administrative hearing was conducted before an Administrative Law Judge ("ALJ"), at which Plaintiff appeared with an attorney.   The ALJ took testimony from Plaintiff and a vocational expert ("VE").

On July 23, 2020, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the amended application filing date, June 30, 2014, and the date of the decision. Tr. 1076-1091.   The ALJ applied the five-step sequential evaluation and found, in pertinent part, that Plaintiff had severe impairments consisting of bilateral knee arthritis, lumbar spondylosis, asthma/COPD, depression, anxiety, and substance abuse in remission. Tr. 1079.   The ALJ found that Plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically-equal a listed impairment.

The ALJ further found that Plaintiff had the RFC to perform less than a full range of light work,[4] and, in pertinent part, that Plaintiff could "stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday." Tr. 1083.   The ALJ also indicated that Plaintiff needed a cane "during periods of ambulation," that is, when moving about while not seated.[5] (Tr. 1083).   The ALJ found that with such RFC, Plaintiff could not perform any past

---

[4]A full range of "light work" generally involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Giddings v. Astrue*, 333 F. App'x 649, 651 (2d Cir. 2009) (quoting 20 C.F.R. § 404.1567(b)).   More specifically, a full range of light work generally involves standing and/or walking for up to six hours during an eight-hour workday. *See, Gray v. Kijakazi*, No. 20 CIV. 4636 (SLC), 2022 WL 974385, at *12 (S.D.N.Y. Mar. 31, 2022) ("SSR 83-10 expands on the walking and standing requirements of light work, and provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.") (citing SSR 83-10, 1983 WL 31251, at *6). *See*, SSR 83-10 ("'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.").

[5] "Ambulation: the act, action, or an instance of moving about or walking." https://www.merriam-webster.com/dictionary/ambulation

relevant work, but could perform three other specific jobs in the national economy which the VE had identified. Tr. 1089-1090.   Consequently, the ALJ found that Plaintiff was not disabled.

The VE's testimony, in pertinent part, was in response to questioning by the ALJ in which he asked the VE to consider a hypothetical claimant with the ability to perform "a range of light exertional activity," who would need "a cane during periods of ambulation." (Tr. 1136).   Notably, when the ALJ posed this question, apart from referring to "light work" he did not specify that the claimant had any particular limits on the duration of her ability to sit, stand or walk.   The VE indicated that the claimant's use of a cane would restrict her to light work jobs "where a person is seated the majority of the day, but may have an occasional lift of up to 20 pounds." (Tr. 1137). The VE explained that work may be classified as light either because it requires occasionally lifting up to twenty pounds or because it requires standing and/or walking for more than two hours per day, and the jobs she identified involved the former, not the latter. (Tr. 1137-1138). In other words, the VE identified jobs that were basically sedentary, in that they did not require much, if any, standing or walking, but were nevertheless classified as "light" since they required occasional lifting of up to twenty pounds.

Upon cross examination, Plaintiff's counsel asked the VE whether the same hypothetical claimant would be able to perform those same those jobs if she required a "sit/stand option," [6]

---

[6] "A sit-stand option is a special situation in which an employee who is functionally incapable of sitting and/or standing for a prolonged period of time may engage in sedentary or light work with the option of periodically alternating between the sitting and standing positions." *Wilson v. Colvin*, No. 14CV5666 DF, 2015 WL 5786451, at *16 (S.D.N.Y. Sept. 29, 2015) (citing SSR 83–12).*See*, Titles II & Xvi: Capability to Do Other Work-The medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work, SSR 83-12 (S.S.A. 1983) ("*Alternate Sitting and Standing*. In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the

involving switching between sitting and standing every fifteen minutes, and further required a cane for "standing," as opposed to ambulating. (Tr. 1139).   The VE answered in the negative and reiterated that the jobs she had identified were "performed primarily from a seated position" and could not be performed by someone standing and gripping a cane, since the jobs "require[d] bimanual dexterity."   (Tr. 1139).   However, despite the VE's testimony that the three jobs she had identified were primarily performed while sitting, the ALJ never asked the VE whether the jobs could be performed by someone who could sit for only six hours per day.

With regard to the RFC finding generally, the ALJ found that Plaintiff's statements about the severity of her physical symptoms were not entirely supported by the evidence. Tr. 1084. More specifically, the ALJ made the following findings concerning Plaintiff's physical ailments: 1) they generally responded well to conservative treatment; 2) objective testing found only mild conditions; and 3) office treatment notes indicated that Plaintiff was able to engage in activities inconsistent with her claim of total disability, such as babysitting for her nephew and walking without a cane.   Overall, the ALJ asserted that the RFC finding was "consistent with and supported by the observations of treating, reviewing, and examining sources in the medical records." (Tr. 1086).   The ALJ also did not find Plaintiff entirely credible, noting, for example,

---

relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.) There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.").

instances in which she was not truthful about her substance abuse.[7]

The ALJ went on to find, in a discussion lasting five pages, that Plaintiff's statements about her physical impairments were also not entirely consistent with the medical opinion evidence. Tr. 1084-1089. The ALJ noted, for example, that in 2014 consultative examiner Donna Miller, D.O. ("Miller") had examined Plaintiff and assessed only "mild limitations for heavy lifting, bending, and carrying" (Tr. 1084); that in May, 2019, treating physician Michael Calabrese, M.D. ("Calabrese") indicated that Plaintiff had moderate limitations for standing and walking (Tr. 1085); that in October, 2019, consultative examiner Nikita Dave, M.D. ("Dave") found that Plaintiff could stand and walk each for a total of two hours in an eight-hour workday (Tr. 1085); that in 2012, 2015 and 2016, respectively, treating physician Bidappa Maneyapanda, M.D. ("Maneyapanda") had indicated that Plaintiff could stand and walk each for two hours in an eight-hour workday, that she was moderately limited in standing and walking, and that she should "avoid heavy manual labor" (Tr. 1087-1088); and that in February, 2020, treating nurse practitioner Meggan Shea, N.P. ("Shea"), a member of Calabrese's practice, found that Plaintiff could only "stand/walk" for two hours in an eight-hour workday (Tr. 1088). However, the ALJ found that "the medical opinions in the record are inconsistent with the allegations of disabling work-related functional limitations." (Tr. 1084)

In that regard, the ALJ concluded that Miller's opinion was entitled to "significant weight," "due to her expertise, her physical examination of the claimant, and the relative consistency of her opinions with the overall medical evidence, including the claimant's good response to

---

[7] *See, e.g.*, Tr. 1084 ("Although the claimant denied using alcohol in 2012-2015, there are mental health treatment notes that reveal ongoing alcohol use during this period.").

ongoing treatment." (Tr. 1087).   The ALJ also found that Dave's opinion was entitled to "significant weight," although he specifically rejected several aspects of Dave's report. (Tr. 1087). Significantly, however, the ALJ did not specifically reject Dave's opinion that Plaintiff was limited to standing and walking each for only one hour at a time and for only two hours total during an eight-hour workday. (*Id*.).   Indeed, the ALJ did not mention Dave's opinion that Plaintiff could only stand or walk for one hour at a time.

The ALJ gave Maneyapanda's treating opinions "little weight," finding that they were "non-specific" and "inconsistent with each other and the medical evidence." (Tr. 1087).   Of particular note, the ALJ rejected Maneyapanda's 2012 report, limiting Plaintiff to standing and walking each for only two hours in an eight-hour workday, since it pre-dated her SSI application and since it purportedly was inconsistent with both the objective medical testing and Plaintiff's reported activities. (Tr. 1088).

Finally, the ALJ gave "very little weight" to Shea's opinion that Plaintiff could stand and/or walk for only two hours total in an eight-hour workday.   In that regard, the ALJ found it was inconsistent with "the balance of the evidence," including evidence that Plaintiff's condition had improved in response to conservative treatment, evidence concerning Plaintiff's activities of daily living, and opinion evidence from Drs. Miller and Dave. (Tr. 1089).

Except as already noted, the ALJ generally did not discuss Plaintiff's ability to stand or walk, with two exceptions: First, at step three of the sequential evaluation process, the ALJ stated that, "[t]he evidence in the record shows that the claimant is capable of sustaining a reasonable walking pace over a sufficient distance because she is able to carry out her activities of daily living," namely, bathing, grooming herself, washing laundry and shopping. (Tr. 1080, 1082); and,

9

second, the ALJ noted Plaintiff had been observed walking without a cane, with only a "mild antalgic gait." (Tr. 1084).

In this action, Plaintiff contends that the Commissioner's decision denying benefits must be reversed for two reasons: 1) the ALJ failed to explain the inconsistency between his RFC finding that Plaintiff could stand and/or walk for a total of six hours in an eight-hour workday, and the opinion of Dr. Dave that Plaintiff could only stand or walk for only one hour at a time and for four hours total in an eight-hour workday, even though he purported to give Dave's opinion "significant weight";[8] and 2) the ALJ violated the Commissioner's regulations by failing to consider to consider the "consistency" of the medical opinion evidence, and, more specifically, in failing to consider that such evidence consistently indicated that "Plaintiff was significantly restricted in standing and walking and required a sit/stand option."[9]

Defendant disputes Plaintiff's arguments and maintains that the ALJ's decision is free of reversible legal error and supported by substantial evidence.

The Court has carefully reviewed and considered the parties' submissions.

DISCUSSION

The ALJ's Alleged Failure to Properly Evaluate Medical Opinion Evidence

Plaintiff contends that it was error for the ALJ to give "significant weight" to Dr. Dave's opinion, but then fail to explain why he found, contrary to such opinion, that Plaintiff was able to stand and walk for six hours during an eight-hour workday without a sit/stand option. *See, e.g.*,

---

[8] *See*, Pl. Memo of Law, ECF No. 10-1 at p. 15 ("The ALJ's RFC is not supported because he gave significant weight to Dr. Dave's opinion, which included restrictions in standing and walking that precluded light work, but failed to explain this substantial discrepancy[.]"); *see also, id*. at 16 (Asserting that the ALJ failed to give "adequate consideration [to] the regulatory factor of consistency when weighing these multiple consistent opinions.").

[9] ECF No. 10-1 at p. 16.

ECF No. 10-1 at p. 16 ("[T]he ALJ did not mention Dr. Dave's restriction of Plaintiff to standing and walking for [four hours total and] only one hour each at a time, a restriction that implicated a sit/stand option was necessary."). Plaintiff further maintains that the ALJ violated the Commissioner's regulations by failing to consider the "consistency" of the medical opinion evidence, which, according to Plaintiff, consistently indicated that Plaintiff was significantly restricted in standing and walking and required a sit/stand option. *Id*. at 18 ("[T]he ALJ failed to properly consider the factor of consistency and failed to consider that Dr. Maneyapanda's opinion, Dr. Calabrese's opinion, and NP Shea's opinion were all consistent with Dr. Dave's opinion that Plaintiff could stand and walk for only two hours each in an eight-hour workday and she needed a sit/stand option.").

The applicable legal principles on these points are well settled, beginning with the fact that an ALJ's RFC finding need not perfectly correspond to any particular medical opinion:

> "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996) (emphasis added). Therefore, the ALJ's RFC determination need not perfectly correspond with any one of the opinions of the medical sources cited in his or her decision, so long as he or she has "weigh[ed] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

*Violet-Maria R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0999 (CJS), 2021 WL 1169186, at *4 (W.D.N.Y. Mar. 29, 2021).

An ALJ, though, cannot arbitrarily substitute his own lay opinion for competent medical opinion evidence. *See, e.g., Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) ("[T]he ALJ cannot arbitrarily substitute h[er] own judgment for competent medical opinion." *McBrayer v.*

*Secretary of Health and Human Servs*., 712 F.2d 795, 799 (2d Cir. 1983)."). However, as just mentioned, an ALJ is entitled to make an RFC finding that is consistent with the record as a whole, even if it does not perfectly match a particular medical opinion. *See, Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also, Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, *inter alia*, the testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

An ALJ's RFC finding also need not incorporate every limitation contained in a medical opinion to which the ALJ gave weight. *See, Chasity A. v. Kijakazi*, No. 3:21-CV-551 (DJS), 2022 WL 1984148, at *3 (N.D.N.Y. June 6, 2022) ("Nor is the ALJ required 'to adopt each and every limitation identified' merely because she gave weight to an opinion.") (citing *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, at *4 (N.D.N.Y. Mar. 18, 2019)); *see also, Sergio A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1739-DB, 2022 WL 1004345, at *8 (W.D.N.Y. Apr. 4, 2022) ("[T]here is no requirement that the ALJ accept every limitation in a medical source's opinion.") (citing *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013)); *Kathy B. v. Commissioner of Social Security*, No. 1:20-CV-0658 CJS, 2021 WL 4397896, at *9 (W.D.N.Y. Sept. 27, 2021) ("Of course, when making an RFC finding an ALJ is not required to discuss every piece of evidence or to adopt every limitation contained in a medical opinion, even where he generally gives the opinion great

weight."); *Murray v. Comm'r of Soc. Sec.*, No. 17-CV-6750 CJS, 2019 WL 2422494, at *7 (W.D.N.Y. June 10, 2019) ("[T]he premise of Plaintiff's argument (that when an ALJ gives 'great weight' to a medical opinion she must necessarily incorporate every limitation expressed in the opinion into the RFC finding) is incorrect.") (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

An ALJ should, however, explain why he did not include such limitations in the RFC finding. *See, e.g., Linda H. v. Comm'r of Soc. Sec.*, No. 19-CV-1244-LJV, 2021 WL 2075437, at *3 (W.D.N.Y. May 24, 2021) ("Of course, the ALJ was not required to accept everything about which Dr. Liu opined.  But she was required to explain what parts of Dr. Liu's opinion she rejected and why. After all, when a medical source opinion conflicts with the RFC, 'the [ALJ] must explain why th[at] opinion was not adopted.' SSR 96-8p, 1996 WL 374184, at *7.") (citation omitted); *see also*, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) ("*Medical opinions*. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

An ALJ's failure to provide such an express explanation is not automatically a basis for remand, where a reviewing court is able to glean the ALJ's rationale from the decision and the record. *See*, *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (Holding that even where an ALJ fails to provide an express rationale for a finding, courts must nevertheless uphold the finding where the ALJ's decision and the "clearly credible" evidentiary record otherwise indicate that the finding is supported by substantial evidence).   A court, though, is not permitted to uphold an ALJ's finding where the basis for it is unclear or where to do so would require the court

to make credibility determinations or draw inferences that are within the province of the ALJ:

> Unfortunately, the ALJ's otherwise thorough opinion failed to set forth a specific rationale in support of the foregoing conclusion. Nonetheless, the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.
>
> ***
>
> [I]n spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence. Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision.

*Berry v. Schweiker*, 675 F.2d at 468, 469 (citations omitted).

Additionally, remand may be required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record," or where the ALJ's lack of analysis otherwise inhibits a meaningful review by the court. *See, Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence.   Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.   *Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions,*

14

*despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review*.") (emphasis added, citations omitted).

Moreover, under the "old regulations" applicable to the ALJ's decision here, when assessing medical opinion evidence from a treating source, the ALJ must consider, among other things, how consistent the opinion is with the other evidence of record. *See, e.g., Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) ("The governing regulations require an ALJ to explicitly consider certain nonexclusive factors when making this determination: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.") (summarizing 20 C.F.R. § 404.1527(c); citation omitted).   However, the failure to explicitly apply these so-called "*Burgess* factors" may be harmless error if the ALJ otherwise provides good reasons when assigning weight to a treating source's opinion. *See, Ferraro v. Saul*, 806 F. App'x 13, 14–15 (2d Cir. 2020) ("[T]he 'failure to explicitly apply the *Burgess* factors when assigning weight . . . is a procedural error,' and unless the ALJ has 'otherwise provided good reasons for its weight assignment, we [will be] unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth its reasons.' *Id*. 'If, however, a searching review of the record assures us that the substance of the treating physician rule was not traversed, we will affirm.' *Id*.") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

In the instant case, the Court finds that the ALJ erred both in failing to adequately explain why he did not adopt the sitting and standing limitations contained in Dr. Dave's opinion, and in failing to consider the consistency of the various medical opinions, including treating medical

15

opinions, regarding Plaintiff's ability to stand and/or walk, and that such errors require remand for clarification.   The ALJ did not explain why he found that Plaintiff could stand and/or walk for six hours, apparently without needing to change position, contrary to Dave's opinion that Plaintiff could stand/walk for only four hours total and for only one hour at a time.   Nor did the ALJ discuss the consistency or inconsistency of Dave's opinion with those other medical opinions indicating that Plaintiff would need to change position at specified intervals.

### The ALJ's Determination at Step Five

There is a further issue, namely, whether the ALJ's finding at step five, that Plaintiff could perform the three jobs identified by the VE, is supported by substantial evidence.[10]   More specifically, it is not clear that the questions posed and answers given during the VE's testimony support the ALJ's finding that Plaintiff could, with the subject RFC, perform the three jobs identified by the VE.   Significantly, the VE was asked about a claimant who could perform light work but needed a cane to ambulate.   In response, the VE identified three jobs, and indicated that the jobs would have to be performed primarily, if not entirely, in the sitting position due to the hypothetical claimant's use of a cane to ambulate.   The ALJ, though, did not specify that the hypothetical claimant had any limit on her ability to sit, and, more specifically, did not ask whether the jobs could be performed by someone who was limited to sitting for only six hours (but who

---

[10]  The Court raises this issue *sua sponte*. *See, e.g., Cortes v. Berryhill*, No. 3:16-CV-01910 (JCH), 2018 WL 1392903, at *2 (D. Conn. Mar. 19, 2018) ("A court will not typically consider a non-jurisdictional issue that a party has failed to raise. However, the claims process for Social Security benefits is nonadversarial and, on appeal, courts "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)).   . . .   Many courts have found that they may consider errors in benefits determinations that have not been raised.") (collecting cases).

apparently could stand for the remaining two hours without using a cane).   In other words, the ALJ included a further limitation in the RFC finding that was not included in the hypothetical question posed to the VE, namely, the six-hour sitting limitation.   Consequently, it is unclear, without additional testimony from the VE, whether the RFC finding, which, *inter alia*, limits the Plaintiff to sitting for six hours per workday, is a match for the jobs identified by the VE, which are performed primarily while sitting but perhaps could be performed by someone standing who had the use of both hands.[11]   Remand for clarification on this point is therefore warranted.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 10) for judgment on the pleadings is granted, Defendant's cross-motion (ECF No. 12) for the same relief is denied, and this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order pursuant to sentence four of 42 U.S.C. § 405(g).   The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
        September 26, 2022

ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge

---

[11]  The VE's testimony in response to counsel's question about a "sit/stand option" indicates that those same jobs cannot be performed by someone needing a cane *to stand*, because the jobs "require bimanual dexterity." (Tr. 1139).   However, the ALJ's RFC finding specifies that Plaintiff needs a cane to ambulate, not to stand in place. Accordingly, the VE's answer to counsel's question does not necessarily indicate that the jobs identified by the VE cannot be performed by someone able to stand without a cane.